IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00248-FL

**Teresa Houston Hodge,**

        Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

        Defendant.

**Memorandum & Recommendation**

Plaintiff Teresa Houston Hodge instituted this action on June 15, 2015, to challenge the denial of her application for social security income. Hodge claims that Administrative Law Judge Juan C. Marrero erred in his determination by failing to give appropriate weight to the opinion of a treating physician, failing to properly evaluate Hodge's credibility, and presenting a flawed hypothetical question to the Vocational Expert ("VE") at step five. Both Hodge and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 15, 23.

After reviewing the parties' arguments, the court has determined that ALJ Marrero erred in his determination. There is substantial evidence to support his evaluation of both Hodge's credibility and Dr. Boyd's opinion. However, the decision fails to sufficiently explain how the limitations assessed at step three are addressed in Hodge's residual functional capacity ("RFC") determination and in the step five finding. Therefore, the undersigned magistrate judge recommends that the court grant Hodge's Motion for Judgment on the Pleadings, deny Colvin's

Motion for Judgment on the Pleadings, and remand the matter to the Commissioner for further action.[1]

I. **Background**

On October 5, 2011, Hodge filed an application for supplemental security income. Her application alleged a disability that began on January 5, 2008. After her claim was denied at both the initial stage and upon reconsideration, Hodge appeared before ALJ Marrero for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Marrero determined Hodge was not entitled to benefits because she was not disabled. Tr. at 21–29.

ALJ Marrero found that Hodge had the following severe impairments: rule out low average to borderline intellectual functioning, adjustment disorder, degenerative disc disease, human immunodeficiency virus ("HIV"), and arthritis. *Id.* at 23. ALJ Marrero also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Marrero then determined that Hodge had the RFC to perform light work with postural, manipulative, and mental limitations: she requires the ability to alternate between sitting and standing every 45 to 60 minutes; she cannot perform overhead work; and she is limited to work requiring no more than three or four step operation, making the work simple and repetitive in nature. *Id.* at 24. ALJ Marrero also concluded that Hodge had no past relevant work but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id.* at 28–29. These include: parking lot attendant, photocopy machine operator, and office helper. *Id.* Thus, ALJ Marrero found that Hodge was not disabled. *Id.* at 29.

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

After unsuccessfully seeking review by the Appeals Council, Hodge commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on June 15, 2015. D.E. 6.

**II.    Analysis**

   **A.    Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

   **B.    Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to

determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## C. Medical Background

Hodge was injured in a motor vehicle accident in 2008. Tr. at 299, 325. She complained of back and neck pain. *Id.* Imaging studies completed in the months following her accident revealed mild degenerative disc disease of the thoracic spine. *Id.* at 275. Subsequent MRIs showed small herniations in the cervical spine with mild cord compression. *Id.* at 308. She continued to report neck and back pain, for which she was advised to continue physical therapy. *Id.* at 302.

Medical records also note Hodge's HIV diagnosis. *Id.* at 305. Her viral loads were undetectable as of March 2008. *Id.*

Dr. Vandana Devalapalli diagnosed Hodge with cervical sprain and cervical pain with radiculopathy in December 2008. *Id.* at 300. Hodge sought regular chiropractic treatment from January 2009 through August 2010. *Id.* at 280–96.

In September 2009, Hodge began treatment with Dr. Meredith Barbour at Duke Medicine for swelling and cramping in her lower extremities. *Id.* at 313. Treatment records reflect no edema, intact strength, and normal gait. *Id.* at 313–17. A February 2011 MRI on the left foot showed a prior Lisfranc injury. *Id.* at 332–33. She presented to the Emergency Department in September 2011 for left ankle pain and swelling, which was diagnosed as an old injury. *Id.* at 322–24, 327.

Dr. Eunice Ngumba-Gatabaki performed a psychological evaluation on November 11, 2011. *Id*. at 334–39. She indicated that Hodge had a full scale IQ score of 75, which is in the borderline range. *Id*. at 336. Dr. Ngumba-Gatabaki also opined that Hodge may experience difficulty keeping up with her peers and in situations requiring verbal skills; that she may not be able to tolerate stress and pressure associated with a competitive work environment if her physical complaints were verified; and that her ability to understand and follow directions was adequate for her cognitive level of functioning but deficient in comparison to her chronological age group. *Id*. at 336, 338. Dr. Ngumba-Gatabaki diagnosed adjustment disorder, not otherwise specified ("NOS"), and borderline intellectual functioning. *Id*. at 337.

Hodge had a consultative examination with Dr. M.A. Samia on November 14, 2011. *Id*. at 340–45. He assessed disc herniation, joint pain, and arthritis in the knees and feet. *Id*. at 345. Dr. Samia gave no functional assessment of Hodge's ability to sit, stand, walk, lift, or carry. *Id*.

Hodge began receiving care from Dr. Tammy Boyd at Duke Primary Care in December 2011. *Id*. at 348–49. Although Hodge reported chronic pain in her back, neck, and feet, no edema or joint inflammation was noted upon examination. *Id*. at 348–50. Hodge was directed to follow-up with an infectious disease clinic for her HIV. *Id*. In March 2012, Hodge reported to her provider that pain limited her activity but that she walked three days per week.

In March 2012, Hodge began treatment with Dr. Derek Watson at Orthopedic Specialists of North Carolina. *Id*. at 375–76. Examination indicated normal strength and a mildly positive straight leg raise on the left. *Id*. at 377. Dr. Watson noted that a December 2011, MRI of her lumbar spine showed a very small right paracentral L5-S1 disc extrusion that did not seem to have an effect on the nerve roots. *Id*. An April 2012 MRI of Hodge's cervical spine showed broad-based disc bulge at C6-C7 with a superimposed large right paracentral protrusion which

5

cause moderate cord deformation. *Id*. at 364–65. It also showed as a central disc protrusion at C4-C5 which abutted the anterior cervical cord. Id. Dr. Watson diagnosed cervicalgia, lumbar/sacral disc degeneration, and cervical disc degeneration. *Id.* at 374. Hodge was taking various medications for her pain, and he recommended physical therapy and injections. *Id*. She received epidural steroid injections in August 2012 and September 2012. *Id.* at 391–94. Hodge reported improvement in her pain. *Id*. at 374, 412. However, she continued to report that she experienced chronic pain, and Dr. Watson diagnosed depressive disorder NOS and prescribed medication. *Id*. at 384, 400.

Beginning in July 2012, Hodge also received care from Dr. Lawrence Yenni at Orthopedic Specialists of North Carolina for her foot and knee pain. *Id*. at 371. He noted left foot swelling and mild crepitus in her left knee. *Id*. An October 2012, visit noted decreased strength in her knees, and a visit the following month noted some swelling in her lower extremities. *Id*. at 408, 410. Dr. Yenni noted possible peripheral neuropathy. *Id*. at 409.

The record reflects a treatment gap from December 2012 until September 2013, at which time she saw Dr. Jon Wilson. Hodge reported constant pain of 7–8 on a scale of 10. *Id*. at 433. Examination revealed normal strength and good range of motion in the cervical and lumbar spines. *Id*. at 434. Dr. Wilson's impression was that Hodge suffered from neck pain with radicular symptoms in the bilateral upper extremities. *Id*.

A September 2013 MRI of Hodge's cervical spine showed progressive spondylitic changes from C3 through C7 as well as increasing protrusions at C3-C4 and C4-C5. *Id*. at 427. The C3-C4 protrusion touched and indented the ventral aspect of the cord. *Id*. at 426. Additionally, the MRI also indicated persistent, prominent, broad-based central protrusion at C6-C7; moderate central canal stenosis at C4-C5 and C6-C7, with mild canal stenosis at C5-C6; and

6

associated foraminal stenosis from C4 through C7. *Id*. at 427. Hodge thereafter received a cervical steroid injection. *Id*. at 424-25.

Dr. Andre Grant evaluated Hodge's knee pain in September 2013. *Id*. at 428. X-rays showed mild osteoarthritis. *Id*. at 430–31. Dr. Grant diagnosed patellofemoral syndrome and recommended anti-inflammatory medication and bracing. *Id*. at 429.

Hodge was again seen by Dr. Boyd in October 2013. *Id*. at 414–20. Examination notes indicate that Hodge moved all her extremities well and that she had a normal gait. *Id.* Although she stated that Hodge's orthopedic providers could provide greater insight into her limitations, Dr. Boyd prepared a Medical Source Statement ("MSS"). *Id*. The MSS notes diagnoses of chronic neck and back pain from cervical spondylosis, disc herniation, and canal stenosis; bilateral patellofemoral arthralgia; chronic intermittent ankle edema; depression; and HIV. *Id*. at 415. Dr. Boyd opined that Hodge could occasionally lift up to five pounds; she could stand for 30 minutes and sit for 60 minutes; she could sit and stand up to four hours in an eight hour workday; she would need to elevate her legs most of the day; and she would likely be absent from work three or more times per month because of her impairments. *Id*. at 416.

### D.     Credibility

Hodge first argues that ALJ Marrero erred in assessing her credibility by failing to properly support his findings discrediting her allegations. The Commissioner contends ALJ Marrero's credibility determination is well-supported. The court agrees that ALJ Marrero did not err in evaluating Hodge's credibility.

In assessing credibility of plaintiff's pain allegations, the ALJ must follow a two-step process: (1) the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms, including pain, and (2) the ALJ must evaluate the

credibility of the statements regarding those symptoms. *Craig v. Chater*, 76 F.3d 585, 594–96 (4th Cir. 1996). The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, ... laboratory findings," "daily activities," and "medical treatment." *Id.* at 595 (internal quotations omitted). The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996).

Here, ALJ Marrero found that Hodge's medically determinable impairments could be expected to cause the alleged symptoms but that her statements as to the intensity, persistence, and limiting effects was not entirely credible. Tr. at 26. ALJ Marrero noted that: Hodge had a wide-variety of activities of daily living; she had been non-compliant with treatment, failed to pursue recommended treatment, and had missed scheduled appointments; her treatment had been conservative and she reported improvement with steroid injections; and treatment records regularly reflected minimal findings and generally normal examinations. *Id.* at 25–27.

Hodge contends that the results of two imaging studies, which show abnormal results, support her claims and bolster her credibility. She further argues that ALJ Marrero failed to discuss relevant evidence and placed too much emphasis on her activities of daily living.

In his decision, ALJ Marrero noted that an April 2012 MRI showed herniated disc and enlarged lymph nodes. *Id*. at 25. Hodge contends that ALJ Marrero mischaracterized this study, which showed broad-based disc bulge with superimposed large right paracentral protrusion causing moderate cord deformation. *Id*. at 364–65. The Commissioner points out that a disc

8

Case 5:15-cv-00248-FL   Document 27   Filed 06/23/16   Page 8 of 16

herniation follows from the progression of a disc protrusion and then a disc bulge. *See* Michael Perry, M.D., *Disc Protrusion*, https://www.laserspineinstitute.com/back_problems/disc_ protrusion/ (last visited May 12, 2016). Thus, the specific results of the April 2012 MRI are encompassed by ALJ Marrero's notation of disc herniation.

Hodge also contends that ALJ Marrero failed to mention a September 2013 MRI showing spondylitic changes and increasing central protrusions. *Id*. at 427. However, it is well established that an ALJ is not required to cite every piece of evidence or to provide a written evaluation for each document in the record. *See Brittain v. Sullivan*, No. 91–1132, 1992 WL 44817, at *6 (4th Cir. Mar. 11, 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."); *Brewer v. Astrue*, No. 7:07–cv–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered."). Hodge has not shown that a failure to discuss the September 2013 MRI prejudiced her or that even that this imaging study creates a reasonable likelihood that result of the disability determination would have been different. In any event, ALJ Marrero stated that he carefully considered the entire record. *Id*. at 23, 24.

Moreover, activities of daily living are relevant not only to the credibility determination but also to the disability claim evaluation. *See Nelson v. Colvin*, No. 4:12-cv-97-FL, 2013 WL 4504269, at *7 (E.D.N.C. Aug. 22, 2013) (an ALJ's explanation of claimant's daily activities is highly relevant to a credibility determination based on the factors the ALJ is to consider as listed in SSR 96–7p). Despite her statements of chronic and disabling pain as well as limited intellectual functioning, ALJ Marrero noted that she was independent in personal care, cared for

9

several children, managed her finances, had her driver's license, and cooked, shopped, and performed chores. Tr. at 24, 27. Consideration of such evidence is both proper and probative.

In reviewing whether substantial evidence supports an ALJ's determination, the court must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). As credibility determinations must be given great deference, *see Johnson*, 434 F.3d at 653 (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ), and there is substantial evidence to support ALJ Marrero's credibility determination, the Commissioner's decision should be affirmed in this issue. *See Shively*, 739 F.2d at 989 ("[B]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."); *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (an ALJ's credibility determination "should be accepted by the reviewing court absent exceptional circumstances.") (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)); *see also Meadows v. Astrue*, No. 5:11–CV–63, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (upholding ALJ's credibility determinations where they were neither unreasonable nor contradicted by other findings).

### E. Treating Physician's Opinion

Hodge next asserts that ALJ Marrero erred in affording little weight to the Medical Source Statement of her treating physician, Dr. Boyd. The Commissioner maintains that Dr. Boyd's opinion is not entitled to controlling weight because it was unsupported by her own

treatment notes and it was also inconsistent with other substantial evidence in the record. The court finds that ALJ Marrero did not err in weighing Dr. Boyd's opinion.

The ALJ must weigh and evaluate all medical opinions received, regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions of treating sources are given greater weight than opinions of non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While a treating source's opinion usually is afforded "great weight," the ALJ is not required to afford it "controlling weight." *Craig*, 76 F.3d at 589–90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id*. at 590. If the ALJ determines a treating source's opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to those opinions. SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

Dr. Boyd treated Hodge since 2011. Her October 24, 2013 Medical Source Statement included several diagnoses. Tr. at 414–20. As noted above, it opined that Hodge could occasionally lift up to five pounds, she could sit and stand four hours in an eight hour workday, she would need to elevate her legs throughout the day, and she would likely be absent from work three or more times per month. *Id*. In considering Dr. Boyd's opinion, ALJ Marrero noted that she had not been involved in Hodge's orthopedic care, her findings on examination were

generally normal, and her limitations appeared to be based on Hodge's subjective complaints. *Id*. at 27. Finding Dr. Boyd's opinion inconsistent with other evidence, ALJ Marrero thus afforded it little weight. *Id*.

There is substantial evidence to support ALJ Marrero's assessment of Dr. Boyd's opinion and his decision to give it less than controlling weight. First, although Hodge points out that Dr. Boyd is her treating physician, she acknowledges that Dr. Boyd is not a specialist and, at the time of the hearing, she had provided her treatment for less than two years. Dr. Boyd's treatment notes do not corroborate the degree of limitation she assessed in the MSS. *Id*. at 27. On the date of the MSS, for example, Dr. Boyd noted Hodge had normal gait and good range of motion in her extremities. *Id*. at 414–20. Moreover, Dr. Boyd was not involved in Hodge's orthopedic care, and she stated that Hodge's orthopedic providers were in a better position to offer insight into her limitations. *Id.* at 420. Additionally, although Dr. Boyd opined that Hodge would need to elevate her feet throughout the day, the record contained limited instances of mild edema in her lower extremities, and the majority of treatment records did not note edema in her lower extremities. *Id*. at 327, 332, 371, 408. Accordingly, ALJ Marrero did not err in excluding this limitation from the RFC as it is unsupported by the record.

Because Dr. Boyd's opinion was inconsistent with other substantial evidence in the record, the opinions expressed in her MSS were not entitled to controlling weight. Consequently, the court cannot conclude that ALJ Marrero erred in affording this opinion little weight. Hodge's argument on this issue, therefore, lacks merit.

  **F.**  **Concentration, Persistence, or Pace**

Finally, Hodge maintains that ALJ Marrero erred in determining the RFC, and again at step five in posing hypothetical questions to the VE, by failing to account for her moderate

limitations in concentration, persistence, or pace. The Commissioner asserts that three psychologists opined that Hodge could perform simple, routine tasks despite her mental limitations. She therefore contends that substantial evidence supports the limitation to simple, repetitive work involving three to four step instructions and that such a restriction sufficiently addresses Hodge's limitations in this functional area.

In *Mascio v. Colvin*, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d 632, 638 (4th Cir. 2015) (internal quotations omitted). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Provided the finding is sufficiently explained in the decision, an "ALJ may find that the concentration, persistence, or pace limitation does not affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id*. In *Mascio*, where the ALJ "gave no explanation" on this issue, the Fourth Circuit held that remand was warranted. *Id.*

At step three, ALJ Marrero noted that Hodge has moderate difficulties with regard to concentration, persistence, or pace. Tr. at 24. In making the RFC determination, he limited her to "work requiring no more than three or four step operation, making the work simple and repetitive in nature." *Id*.

Here, the court must determine whether a limitation to simple, repetitive work with three to four step instructions addresses Hodge's moderate limitations in concentration, persistence, or pace assessed at step three. Some courts have found that similar restrictions in the RFC do not sufficiently address moderate limitations in concentration, persistence, or pace. *See Biddell v.*

13

*Colvin*, No. 1:15-CV-00080-MOC, 2016 WL 815300, at *5-6 (W.D.N.C. Feb. 29, 2016) (finding that the RFC limiting the plaintiff "to simple, routine, repetitive tasks involving only one to three step instructions, a non-production pace, occasional contact with the public, no intense interaction with supervisors and coworkers, in a setting with no confrontation or brainstorming and dealing with things and not people" did not account for moderate limitations in concentration, persistence, or pace); *Taylor v. Colvin*, No. 1:14-cv-629, 2015 WL 4726906 (M.D.N.C. Aug. 10, 2015) (RFC determination that claimant could understand, remember, and carry out one and two step instructions/tasks did not address moderate limitations in concentration, persistence, or pace); *Wedwick v. Colvin*, No. 2:14-cv-267, 2015 WL 4744369, at *23 (E.D. Va. Aug. 7, 2015) (RFC and hypothetical questions that limited plaintiff to simple, routine, repetitive 1 and 2 step tasks due to limitations in concentration, persistence, or pace did not sufficiently address plaintiff's moderate limitations in that functional area because it determined only her ability to do a task, not stay on task, as *Mascio* requires). *But see Walker v. Colvin,* No. 6:14-cv-0025, 2015 WL 5138281 (W.D. Va. Aug. 31, 2015) (RFC that limited plaintiff to simple, 1 to 2 step instructions, specifically accounted for her moderate limitations in concentration, persistence, or pace where medical opinion evidence supported the conclusion that she was capable of performing the basic mental demands of simple work with 1 to 2 step instructions despite her limitations).

The Commissioner's reliance on the evaluations of three psychological consultants does not sufficiently explain how his step three findings are reconciled in the RFC and in the hypothetical questions at step five. Dr. Ngumba-Gatabaki opined that Hodge could sustain attention to perform routine, repetitive tasks. Tr. at 338. ALJ Marrero gave this assessment some weight. *Id.* at 27. Both Drs. Stobel-Nuss and Williams determined that although she had

14

moderate limitations in concentration, persistence, or pace, it was reasonable to limit Hodge to simple, routine, repetitive tasks. *Id.* at 86, 89, 90, 102, 106–07. The ALJ assigned significant weight to these evaluations. *Id.* at 28. However, aside from finding these opinions consistent with the overall record of evidence, ALJ Marrero did not sufficiently explain how Hodge's moderate limitations in concentration, persistence, and pace are reflected in the RFC as required by *Mascio*. *See Boyet v. Comm'r of Soc. Sec. Admin.*, No. 1:14-cv-762, 2016 WL 614708, at *6 (M.D.N.C. Feb. 16, 2016) (concluding that "without further explanation, the ALJ's crediting of the state agency consultants' opinions does not provide a logical bridge, between the ALJ's conclusion that plaintiff suffered moderate concentration deficits and the ALJ's decision that plaintiff could perform simple tasks in the work place, without any further concentration-related restriction"); *Herren v. Colvin*, No. 1:15-cv-0002, 2015 WL 5725903, at * 6 (W.D.N.C. Sep. 30, 2015) (ALJ's discussion of evidence regarding plaintiff's mental health did not sufficiently allow the court to meaningfully review how the ALJ arrived at plaintiff's mental RFC, being capable of simple routine, repetitive tasks, as none of the evidence addressed her mental ability to function in the workplace or her ability to stay on task). In such instances, remand is warranted.

**III.  Conclusion**

For the forgoing reasons, the court recommends that Hodge's Motion for Judgment on the Pleadings (D.E. 15) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 23) be denied, and that the Commissioner's final decision be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must

conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: June 23, 2016

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE