IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-248-FL

| | | |
|---|---|---|
| TERESA HOUSTON HODGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 15, 23). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered a memorandum and recommendation ("M&R"), wherein it is recommended that the court grant plaintiff's motion, deny defendant's motion, and remand for further proceedings. Defendant filed objections to the M&R, upon leave of court out of time, and plaintiff responded. In this posture the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation in the M&R, albeit in part on different grounds.

## BACKGROUND

On October 5, 2011, plaintiff filed an application for supplemental security income, alleging disability beginning January 5, 2008. The application was denied both initially and upon reconsideration. Thereafter, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"), who, after a November 5, 2013, hearing, denied plaintiff's claims by decision entered February 5, 2014. Plaintiff timely filed a request for review with the Appeals Council, which denied

plaintiff's request for review, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed complaint in this court seeking review of defendant's decision.

## COURT'S DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, ___ F.3d ___, 2016 WL 3349355, *11 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. at *10 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court need not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court need only review for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 5, 2011. At step two, the ALJ found that plaintiff had the following severe impairments: r/o low average to borderline IQ, adjustment disorder, degenerative disc disease, human immunodeficiency virus, and arthritis. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work with limitations, including need to alternate between sitting and standing every 45 to 60 minutes; no overhead work; and limited to "work requiring no more than three to four step operations, making the work simple and repetitive in nature." (Tr. 24). In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible. At step four, the ALJ concluded plaintiff had no past relevant work. At step five, the ALJ determined that jobs exist in significant numbers that plaintiff was capable of performing. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.  Analysis

Plaintiff argues that the ALJ erred in addressing her credibility, her treating physician's opinion, and her limitations in concentration, persistence, or pace. The magistrate judge recommended remand on the basis of the ALJ's treatment of limitations in concentration, persistence, or pace, while fining no error on the other issues raised. Defendant objects to the magistrate judge's analysis of concentration, persistence, or pace. Upon careful review of the record

4

and the applicable law, the court adopts the recommendation of the magistrate judge to remand on the basis of concentration, persistence, or pace. In addition, departing from the analysis in the M&R, the court holds that remand is warranted in light of the ALJ's treatment of plaintiff's credibility and treating physician opinion.

    1.    Credibility

Plaintiff argues that the ALJ inadequately explained his assessment of plaintiff's credibility. An ALJ must "assess [plaintiff's] credibility in the context of the function-by-function analysis of the limitations caused by [plaintiff's] impairments, which the ALJ [must] then use to determine [plaintiff's] RFC." Monroe, ___ F.3d ___, 2016 WL 3349355, at *9 n. 12. In assessing credibility of alleged limitations due to pain, the ALJ "must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment." Craig, 76 F.3d at 595 (internal citations omitted).

The ALJ must "build an accurate and logical bridge from the evidence to his conclusion that [plaintiff's] testimony was not credible." Monroe, 2016 WL 3349355, at *10 (internal quotations omitted). In doing so, the ALJ must "analyze[] all evidence and . . . sufficiently explain[] the weight he has given to obviously probative exhibits." Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984). "[R]emand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision." Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (citing Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir.1987)).

5

Here, the ALJ failed to explain why two probative medical reports in the record did not support plaintiff's subjective allegations of disabling pain. The first is a report of an April 16, 2012, MRI of plaintiff's cervical spine, which revealed the following:

> 1. Broad-based disc bulge with a superimposed <u>large right paracentral protrusion which causes moderate cord deformation</u>. No definite abnormal cord signal identified. There is mild central canal narrowing.
> 2. Central disc <u>protrusion at C4-C5 that abuts the anterior cervical cord</u>.
> 3. Increased number of mildly enlarged cervical lymph nodes. Clinical correlation recommended.

(Tr. 365) (emphasis added). In discussing objective medical evidence pertaining to plaintiff's alleged pain symptoms, the ALJ commented only that an "MRI of the cervical spine revealed a herniated disc and enlarged lymph nodes." (Tr. 25). The ALJ did not mention the emphasized findings in the report regarding protrusion causing moderate cord deformation or abutting the anterior cervical cord. On its face, the ALJ's reference to "herniated disc" does not encompass the findings of the April 2012 MRI, absent further explanation in the record.

Moreover, the ALJ did not discuss at all a second report of cervical MRI taken in September 11, 2013, which revealed "[p]rogressive spondylitic changes C3-C7," including "[i]ncreasing central protrusions C3-C4, C4-C5," "persistent prominent broad-based central protrusion C6-C7," and "[m]oderate canal stenosis C4-C5, C6-C7." (Tr. 427) (emphasis added). The report noted a "[b]road-based central protrusion eccentric to the right[,] <u>increased since the prior study</u>," (<u>id.</u>), as well as a "central protrusion that touches and indents the ventral aspect of the cord and has <u>increased since the prior exam</u>." (Tr. 426) (emphasis added).

The ALJ's failure to discuss the emphasized aspects of the 2012 report, as well as the entire 2013 report, prevents meaningful review of the ALJ's determination as to the credibility of plaintiff's allegations of chronic neck pain.

6

Defendant nonetheless argues that the ALJ's notation of a "herniated disc" sufficiently encompasses the findings of the April 2012 MRI, where defendant represents that a "herniated disc" is more severe in progression from a disc protusion and disc bulge. In support of this proposition, defendant cites to a website of a commercial enterprise providing a summary description of certain types of disc deformities: https://www.laserspineinstitute.com/back_problems/disc_protrusion/ (DE 24 at 6; see also M&R (DE 27) at 9). As an initial matter, the summary description of types of disc deformities by such commercial enterprise does not provide a substitute for requisite explanation in the record by the ALJ. In any event, the website cited does not support the proposition advanced by defendant, but rather demonstrates the need for further explanation by the ALJ in light of the specific medical evidence in the record:

> It is important to remember that different health care providers may use terms like "bulging disc," "disc protrusion" and "herniated disc" interchangeably, so you may want to ask for clarification if these terms are discussed during your diagnosis. Also, keep in mind that a disc with a bulge in the outer wall will not always lead to a herniation, or tear, in the disc wall. Disc bulges and tears are often unrelated.

https://www.laserspineinstitute.com/back_problems/disc_protrusion/ (last visited August 2, 2016) (emphasis added).

In sum, in light of lack of adequate explanation regarding the findings in the April 2012 MRI report, as well as lack of any explanation regarding the findings in the September 2013 MRI, the ALJ's credibility determination lacks an "accurate and logical bridge from the evidence to [the ALJ's] conclusion that [plaintiff's] testimony was not credible." Monroe, 2016 WL 3349355, at *10. Accordingly, the court must remand to the ALJ for more specific explanation of the credibility determination.

7

2. Treating Physician Opinion

In light of the same MRI evidence, the ALJ failed also to adequately explain his reasons for giving little weight to the opinion of plaintiff's treating physician, Dr. Tammy L. Boyd. In a medical source statement dated October 24, 2013, Dr. Boyd diagnosed plaintiff with impairments including chronic neck and back pain from cervical spondylosis, disc herination, and canal stenosis. (Tr. 415). Dr. Boyd opined that plaintiff suffered from moderate to severe pain, could only lift 5 pounds occasionally, stand 30 minutes at one time, and sit 60 minutes at one time, among other limitations (Id.).

In giving little weight to Dr. Boyd's opinion, the ALJ reasoned that Dr. Boyd's opinion was "not supported by the treatment reports of the claimant's orthopedic physicians." (Tr. 27). In light of the discussion above of the 2012 and 2013 MRI reports, however, further explanation by the ALJ is required. While the ALJ may give little weight to an opinion of a treating physician where it is contrary to clinical evidence in the record, the 2012 and 2013 MRI reports appear on their face to be consistent with, rather than contrary to, Dr. Boyd's opinion. The ALJ must explain why the 2012 and 2013 MRI reports do not support Dr. Boyd's opinion regarding the severity of plaintiff's pain or limitations in functional capacity. See Monroe, ___ F.3d ___, 2016 WL 3349355, at *11.

3. Concentration, Persistence, or Pace

Plaintiff argues that the ALJ did not account properly for plaintiff's limitations in concentration, persistence, or pace, as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In Mascio, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (internal quotations omitted). "[T]he ability to perform simple

8

tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. An ALJ must "explain why [plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity." Id.; see Monroe, ___ F.3d ___, 2016 WL 3349355, at *10. Provided such an explanation is set forth in the ALJ's decision, an "ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." Mascio, 780 F.3d at 638  In Mascio, where the ALJ "gave no explanation" on this issue, the Fourth Circuit held that "a remand is in order." Id.

In this case, the ALJ determined at step three that plaintiff has "moderate difficulties" in "concentration, persistence or pace." (Tr. 24). The ALJ nonetheless restricted the hypothetical question posed to the vocational expert at step five only to "work requiring no more than three to four-step operation." (Tr. 55-56). As such this hypothetical does not account for plaintiff's limitations in concentration, persistence, or pace, unless the ALJ in his decision sufficiently "explain[ed] why [plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity." Mascio, 780 F.3d at 638.

The ALJ failed to so explain here. The ALJ referenced plaintiff's moderate difficulties in concentration, persistence, or pace, only once in his decision. (Tr. 24). Thereafter, he referred to work limitations of "no more than three to four step operations," or "simple," "routine, repetitive" tasks, without discussing whether and how these latter limitations accounted for the difficulties in concentration, persistence, or pace. (Tr. 24, 25, 27, 28). As such, the ALJ did not "build an accurate

9

and logical bridge from the evidence to his conclusion." Monroe, ___ F.3d ___, 2016 WL 3349355, at *10.

Defendant argues that the ALJ provided a sufficient explanation by relying on medical opinions concluding that plaintiff could do simple, repetitive tasks despite noting limitations in concentration, persistence, or pace. This argument is flawed in several respects. As an initial matter, Mascio does not merely require an ALJ to cite to medical opinions concluding that plaintiff may be limited to simple and repetitive tasks. Mascio requires an ALJ to "explain why [plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity." Mascio, 780 F.3d at 638 (emphasis added). Here, the ALJ does not undertake such an explanation in his decision.

Moreover, the physician reports that defendant references do not themselves explain why plaintiff's moderate limitations in concentration, persistence, or pace do not translate into corresponding restrictions in plaintiff's residual functional capacity. Rather, they note via standard form moderate limitations in concentration, persistence, or pace, and then, without explanation, switch over to a conclusion about simple, routine, or repetitive task limitations. (Tr. 89-90; 102, 106-107). These physician reports thus may also suffer from conflating limitations in concentration, persistence, or pace, with simple, routine, or repetitive task limitations, contrary to Mascio. See 780 F.3d at 638. While defendant offers her own interpretation of the physician reports that may support the ALJ's treatment of concentration, persistence, or pace, the ALJ must explain such interpretation in the first instance on remand. See id.; Monroe, ___ F.3d ___, 2016 WL 3349355, at *10.

10

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation of the M&R, albeit in part on different grounds as set forth herein. Plaintiff's motion for judgment on the pleadings (DE 15) is GRANTED, and defendant's motion for judgment on the pleadings (DE 23) is DENIED. This matter is REMANDED to defendant pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order. The clerk of court is DIRECTED to close this case.

SO ORDERED this 4th day of August, 2016.

LOUISE W. FLANAGAN
United States District Judge